**STATE of Tennessee, Appellee,**

v.

**Eddie Lee TURNER and Arthur Melvin Turner, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 22, 1984.

Permission to Appeal Denied by Supreme Court June 18, 1984.

Raymond S. Leathers, Asst. Atty. Gen., Nashville, James J. Challen, III, Asst. Dist. Atty. Gen., Memphis, for appellee.

Marvin E. Ballin, Memphis, for appellant Eddie Lee Turner.

Edward Witt Chandler, Memphis, for appellant Arthur Melvin Turner.

## OPINION

DAUGHTREY, Judge.

The defendants, brothers Eddie Lee Turner and Arthur Melvin Turner, were indicted for armed robbery and conspiracy to commit armed robbery. In a separate indictment, Eddie Turner also was charged with receiving and concealing stolen property. The charges grew out of the May 1980 hold-up of Harry Levitch's Jewelry Company in Memphis. Both defendants were acquitted of armed robbery but convicted of conspiracy to commit armed robbery, and Eddie Turner was convicted of concealing stolen property over the value of $200. On appeal, they have presented over 50 issues for our review, many of which are redundant, a few of which overlap, and none of which require reversal. The defendants' principal challenges are to (1) the sufficiency of the evidence, (2) the propriety of the jury instructions and (3) the correctness of certain evidentiary rulings by the trial court.

## I. SUFFICIENCY OF THE EVIDENCE

Most of the damaging evidence against the Turners came from their former co-defendant, Kenneth Ray Miles, a participant in the jewelry store robbery who later turned state's evidence and testified against the defendants. He told the jury of their planning, including an advance trip to Levitch's to "case" the store, and he described the robbery in detail.

Miles said he entered the family-run jewelry store on May 21, 1980, dressed as a policeman in an outfit provided by Eddie Turner, and carrying a police radio that witnesses described as playing loudly. With Miles was Melvin Turner, who, dressed in civilian clothes, was posing as a

"plain clothes man." After engaging Mrs. Levitch in conversation about a gift for his wife, Miles asked to "talk terms" with Mr. Levitch, who was summoned from his office in the back of the store. A short time later, Miles pulled his .38 service revolver from the leather holster he was wearing (both provided by Eddie Turner, he said) and held the gun to Mr. Levitch's neck, informing him that "it was a hold-up." Simultaneously, the "civilian robber" pulled a gun on the Levitches' son, Ron Levitch, who also was working in the jewelry store at the time. All three Levitches, a fourth employee, and a customer were forced to the back of the store where they were individually robbed and held at gunpoint by Melvin Turner, while Kenny Miles emptied the display cases in the front of the store of over $350,000 worth of jewelry and watches.

The getaway, in which Eddie Turner participated, had been planned carefully and involved the use of a rented car and Melvin Turner's "psychedilic [sic] van." Within a short time after the robbery, several of the defendants' acquaintances apparently saw the proceeds or heard talk of the robbery, because a few days later, Kenny Miles became a suspect and was forced to leave Memphis because he was "hot." Eddie Turner drove him to St. Louis, and from there he went to Chicago. During the next six months, Miles travelled back and forth between the homes of relatives in Detroit and Milwaukee, trying to collect his share of the Levitch robbery proceeds via long-distance. He was only partially successful—his brother, Johnny Miles, testified that he secured money or jewelry from the Turners on three or four occasions and wired or gave the funds to Kenny. But Kenny said that he never received more than a few thousand dollars altogether, and he finally concluded that he had been "double-crossed" by the Turners. He was therefore open to talking at length about the robbery to the two Memphis police officers who came to Milwaukee to return him to Memphis in January, 1981.

In the meantime, police in Memphis had developed information that led them to the home of a park ranger named Frank Alston. Alston lived in a state-owned house on the grounds of T.O. Fuller State Park, and for some six years, he had let Eddie Turner occupy a spare bedroom there from time to time. Armed with a search warrant, police went to Alston's home in August 1980, secured a written consent to search, and found Harry Levitch's .38 pistol (taken in the robbery) and some $250,000 worth of stolen jewelry (only some of which came from the Levitch robbery) in the closet of the room frequently occupied by Eddie Turner. (Frank Alston originally was charged as an accomplice, but the charges against him were dismissed when he managed to convince police that he had no connection with the stolen property recovered from his house.)

In addition to testimony by Kenny Miles, Frank Alston, Johnny Miles, and Detective W.J. Stringer (who was present when the search of Eddie Turner's room was executed and who took Miles's statement in Milwaukee), two victims of the Levitch robbery identified Melvin Turner in court as the "civilian robber."

The defendants did not testify. Melvin Turner defended principally on the basis of mistaken identity, pointing out to the jury that Mr. and Mrs. Levitch initially had attended a lineup at police headquarters and identified another man (who proved to be unconnected with the robbery) as the "civilian robber." Mr. Levitch also apparently had misidentified photographs of this person and others as being one of the robbers. Defense counsel made much of the fact that several eyewitnesses had reported to police that the "civilian robber" was 5'9" or 5'10" in height, while according to defense witnesses, Melvin Turner stood only 5'5" tall.

Melvin Turner also argued that he could not have helped plan the robbery in April 1980, as described by Kenny Miles in his trial testimony, because he (Melvin Turner) was in California at that time, returning to Memphis on May 10, 1980. He now insists that this evidence wholly refutes the

state's conspiracy theory as to him. Our review of Kenny Miles' testimony shows that he testified that he and Eddie Turner planned the robbery in April, however. Miles made no mention of Melvin Turner's involvement prior to May 20, the day before the robbery. He testified that he and Melvin Turner went to Levitch's on that date to look over the store in preparation for the robbery.

Eddie Turner's defense centered on an effort to impeach the credibility of investigating officers who had secured a search warrant for Frank Alston's house but utilized an executed consent to search form instead. The affidavit on the original warrant indicated that officers · wished to search for stolen motorcycle parts and cocaine, in which Alston was allegedly dealing. It made no mention of the Levitch robbery or the proceeds thereof. Detective Stringer maintained, however, that investigators had obtained information that proceeds from the Levitch robbery were stashed at the house and had secured the warrant specifically to search for the Levitch jewelry. The magistrate who issued the warrant also recalled conversation about the Levitch robbery at the time he issued the warrant. The warrant itself was not introduced as an exhibit, however. The trial judge ruled that it was immaterial to the case because it was never executed and because the officer who was the affiant on the warrant was not available to testify.

Eddie Turner also sought to impeach Frank Alston's testimony about the jewelry and other incriminating items confiscated from his home.

■ Both defendants insist that the evidence is insufficient to support the verdict, pointing principally to the "confusing" and "complex" nature of the state's case, especially in terms of variances between the indictments and the proof, to what they allege is a failure of the proof to corroborate accomplice testimony, and to the fact that the jury found them not guilty of armed robbery. We find, however, that the evidence would have been sufficient as

a matter of law to support convictions for armed robbery as to both defendants, had the jury returned a guilty verdict on those counts. Although there appears to be no logical reason for the jury's failure to do so, acquittal on the armed robbery charge was within their prerogative and any inconsistency with the remaining convictions is not fatal. *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn.1973).

■ The trial judge properly charged the jury that Kenny Miles was an accomplice in the robbery as a matter of law. From the evidence summarized above, it is clear that Kenny Miles's testimony implicating the Turners in both the robbery and the conspiracy to rob was amply corroborated. As this court has previously noted:

> To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise. Conspiracy implies concert of design and not participation in every detail of execution.

*Randolph v. State*, 570 S.W.2d 869, 871 (Tenn.Crim.App.1978). Eddie Turner's conviction for concealing stolen property is likewise supported by the evidence. Moreover, there is nothing in the record to suggest that the trial judge was in any way dissatisfied with the jury's verdict. Hence the defendants' contention that the verdict should be reversed on the basis of the "thirteenth juror rule" is without merit.

■ Nor do we find that there were fatal variances between the indictments in this case and the proof at trial. The conspiracy counts charged conspiracy to rob "the person of Harry Levitch." Melvin Turner argues that the proof showed only an intent to rob the Levitch Jewelry Store. But as the state points out, the crime of robbery is an offense against the person and not against property. Moreover, the

proof showed that the robbery actually commenced only after Kenny Miles asked to see and subsequently pulled a pistol on Harry Levitch. As noted in *Randolph v. State, supra,* "the conduct of the parties in the execution of the criminal enterprise" is evidence of the unlawful agreement of those parties. 570 S.W.2d at 871. Thus, the proof conforms to the charge and no variance has been shown.

█ There is likewise no variance as to the concealing charge against Eddie Turner. Defense counsel alleges on appeal that there is no proof in the record that Eddie Turner received the stolen property in question from a third party. This would, of course, be required only on a charge of receiving stolen property, not concealing it. *See generally Jones v. State,* 219 Tenn. 228, 409 S.W.2d 169 (1966) and *Deerfield v. State,* 220 Tenn. 546, 420 S.W.2d 649 (1967). Counsel also argues that there was no proof that the jewelry recovered from Eddie Turner's closet belonged personally to Harry Levitch, as alleged in the indictment. Levitch identified a photograph showing his .38 pistol and jewelry taken from his store during the robbery, but none of the jewelry taken from his person was recovered from the closet in Eddie Turner's bedroom. Counsel insists that this discrepancy between the indictment and the proof amounts to a fatal variance. However, our Supreme Court recently has held that a technical variance involving the ownership of stolen property is non-fatal, where it does not affect the substantial rights of the accused. *State v. Moss,* 662 S.W.2d 590, 592 (Tenn.1984). That clearly is the case here.

█ Furthermore, there is no evidence to support counsel's argument that Frank Alston was an accomplice whose testimony as to the concealing charge against Eddie Turner required corroboration. Alston testified that he had never seen the items in question prior to the execution of the search warrant, and there is no proof to the contrary in the record before us.

█ Although an argument can be made that Johnny Miles was an accomplice to the concealment of proceeds stolen in the Levitch robbery, there is no evidence of any connection between the items he received on behalf of his fugitive brother, Kenny Miles, and those items concealed by Eddie Turner in the closet of his bedroom at Frank Alston's house. Hence, Johnny Miles was not an accomplice on the concealing count. His activity on Kenny Miles's behalf did make him, at least arguably, a co-conspirator in the concealment phase of the conspiracy to rob. But in the absence of a special request that the jury be given an instruction that Johnny Miles was an accomplice as a matter of law, we find no reversible error in the trial court's failure to give such a charge. *See Taylor v. State,* 544 S.W.2d 897, 901 (Tenn.Crim.App. 1976), *cert. denied* 429 U.S. 930, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976).

## II. JURY INSTRUCTIONS

The defendants further argue that the trial court erred in instructing the jury on the law applicable to the conspiracy charge against them. The indictment charges that the defendants "did unlawfully combine, confederate, agree and conspire to commit the felony of robbery with a deadly weapon upon the person of Harry Levitch, in violation of Section 39–1104, Tennessee Code Annotated...." That statute (now § 39–1–604) makes it a Class X felony to conspire "to commit a felony on the person of another..." but does not otherwise define the term conspiracy. Hence it was necessary for the trial judge to refer back to preceding sections in order to give the jury a full instruction on the law of conspiracy. He read the jury the full provisions of § 39–1101, defining conspiracy, followed by the penalty provisions of § 39–1104, as follows:

"Conspiracy" defined.—The crime of conspiracy may be committed by any two (2) or more persons conspiring: (1) to commit any indictable offense; (2) falsely and maliciously to indict another for such offense; (3) to procure another to be charged with, or arrested for, any such

offense; (4) falsely to move or maintain any suit; (5) to cheat and defraud any person of any property by means in themselves criminal, or by any means which would amount to a cheat; (6) to obtain money by false pretenses; (7) to commit any act injurious to public health, public morals, trade or commerce, or for the perversion or obstruction of justice or the due administration of the law.

Persons found guilty of conspiring to commit a felony upon the person of another shall be punishable by imprisonment in the State Penitentiary for not less than five (5) nor more than fifteen (15) years.

Under § 39–1103 (now § 39–1–603), a person who commits a conspiracy in violation of § 39–1101 is guilty of a misdemeanor. The defendants thus argue that because the jury was given a misdemeanor charge, the most they can be convicted of is a misdemeanor, and further, that since the one year statute of limitations on misdemeanors had run prior to indictment, the conspiracy charge should be reversed and dismissed.

■ We find no merit to this argument. Although much of the definition of conspiracy given to the jury was surplusage under the facts of this case, the prohibition in § 39–1101(a) against conspiracy "to commit any indictable offense" was relevant here. If that "indictable offense" were shown to be "a felony [committed] on the person of another," then the felony sentencing provision of § 39–1104(a)(2) would prevail over the corresponding misdemeanor sentencing provision of § 39–1103. That is precisely what was shown in this case, and thus the inclusion of surplusage in the charge was plainly harmless. All other similar issues raised by defendants in relation to this instruction are likewise meritless.

■ Finally, in connection with the instructions, Eddie Turner alleges that the trial court erred in failing to charge receiving and concealing stolen property under the value of $200, but he has failed to brief the issue. It is thus considered waived. *Burns v. State*, 591 S.W.2d 780, 782 (Tenn.

Crim.App.1979). He also has complained about the propriety of the court's charge on aiding and abetting, but the nature of his complaint is unclear to the Court. For these reasons, neither issue can be reviewed or resolved on appeal. Any error in connection with the trial court's charge as to the criminal records of witnesses at trial clearly was harmless.

## III. EVIDENTIARY RULINGS

Both defendants take issue with many of the rulings made by the trial judge during the lengthy trial of this case, which produced a transcript of testimony alone that is over 800 pages long. Obviously, in a trial of such length, the trial judge is called upon to make many decisions, some of them close calls. We find remarkably few which merit extended discussion here. Indeed, some of the objections now brought to our attention appear frivolous in nature.

■ For example, counsel for Melvin Turner argues that the trial judge erred in invoking the rule of sequestration against Ronald Levitch, who was discovered to be in the courtroom after he had testified and had been excused. Although he now claims prejudice requiring reversal, defense counsel conceded at the time that he did not intend to recall the witness in question.

■ Likewise without merit is defense counsel's complaint that he was cut off from asking a defense witness about his wife's occupation. He now insists that the fact that the witness's *spouse* worked at a bank would enhance the *witness's* credibility with the jury and that to disallow it was "serious error."

■ Other examples of similarly meritless objections abound. Melvin Turner's counsel objects because he was not given an oral statement made by Eddie Turner to Kenny Miles. He alleges that this omission violates Rule 16, Tennessee Rules of Criminal Procedure. Of course, nothing in Rule 16 entitles a defendant to discover the oral statements of his co-defendant. Moreover, the statement was an

oral one not made to a law enforcement agent and thus was not discoverable. *See* Rule 16(a)(1)(A). The same observation applies to oral statements made by Melvin Turner to non-law enforcement officials. Counsel further objects to the introduction of these oral statements by the defendants on hearsay grounds, but in each case the statements were admissible under the admissions exception to the hearsay rule. He next alleges that certain items of physical evidence—the holster, police belt, and police radio used by Kenny Miles while posing as a policeman during the robbery—were introduced improperly because eyewitnesses could only testify that the items "looked like" the ones used during the robbery. .These items were positively connected to the offense, however, through the testimony of Kenny Miles, who identified them as the ones he used in the robbery, and by the testimony of Detective Stringer, who confiscated them from Frank Alston's home.

■■■ Eddie Turner's counsel complains that the court erred in refusing to order the state to furnish the audiotape of a pretrial conversation between Detective Stringer and Frank Alston. But the record shows that the trial judge *did* order production of the tape and that it was reviewed by counsel and used in cross-examination of the declarants.

■■■ Numerous complaints are raised concerning relevancy rulings which limited testimony of witnesses at trial. None appear to involve an abuse of discretion. Nor do we find error in the trial court's refusal to allow Melvin Turner to display certain physical traits. A trial court has the discretion to allow such an exhibition. But generally the trial judge's decision not to allow it will not be overturned, especially where the jury had ample opportunity to view the defendant during the course of the trial. *See, e.g., State v. Gooch*, 186 Conn. 17, 438 A.2d 867, 870 (1982).

We have reviewed the various other issues raised by defendants in their briefs and find no reversible error in connection with them. As the state points out, some 20 of them carry no citation of authority and thus are not subject to review. *See* Rule 27(a)(7), Tennessee Rules of Appellate Procedure and Rule 10(b), Rules of the Court of Criminal Appeals; *State v. Wright*, 632 S.W.2d 562, 564 (Tenn.Crim. App.1982); *Moorman v. State*, 577 S.W.2d 473, 476 (Tenn.Crim.App.1978). We suggest to counsel that the inclusion of so many unsupportable issues on appeal dilutes the strength of arguably meritorious points which deserve full and forceful treatment.

The judgment of the trial court is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.