# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 29, 2010

## STATE OF TENNESSEE v. NAPOLEON STEPHAN MEREDITH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2378     Cheryl Blackburn, Judge**

---

**No. M2009-01428-CCA-R3-CD - Filed March 30, 2011**

---

A Davidson County Criminal Court Jury convicted the appellant, Napoleon Stephan Meredith, of two counts of aggravated robbery.  The trial court imposed a total effective sentence of nine years in the Tennessee Department of Correction.  On appeal, the appellant argues that the trial court erred in failing to allow the appellant to be viewed from a close distance by the jury and that the error forced him to relinquish his Fifth Amendment right not to testify.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Caesar Cirigliano, Nashville, Tennessee, for the appellant, Napoleon Stephan Meredith.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Jeff Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, the victims, Belinda Louise Becerra and Jose Becerra,[1] testified that they were married but that in April 2008, because of marital difficulties, Mrs. Becerra was living with

---

[1]  Jose Becerra testified through an interpreter at trial.

her daughter at the Holly Hills apartment complex on Humbar Drive in Nashville. On April 26, 2008, the Becerras met at the apartment to discuss their marital problems. They went out to eat, and, upon returning, Mr. Becerra parked in front of the apartment.

The victims testified that as they sat in the car talking, a silver Ford Taurus parked behind them. Two black males, one of whom they identified as the appellant, got out of the Taurus and approached the driver's side of Mr. Becerra's car. The appellant told Mr. Becerra "that this was a robbery, that he wanted the money." The other perpetrator pointed a gun at Mr. Becerra. Mrs. Becerra implored her husband to comply with the perpetrators' demands.

The victims said that the appellant "yanked" Mr. Becerra out of the car. The appellant searched Mr. Becerra's pockets while the gunman reached in the car and grabbed Mrs. Becerra's purse. The appellant took Mr. Becerra's wallet, which contained his identification and approximately $160. The appellant asked the gunman if he had "it," meaning Mrs. Becerra's purse. When the gunman said he did, the perpetrators left. The victims said the men walked away "like nothing ever happened."

The victims testified that after the perpetrators left, Mrs. Becerra ran to a neighbor's apartment, borrowed a telephone, and called police. When officers arrived, Mrs. Becerra recounted the events. She described the appellant as a black male with shoulder-length braids. She said he had red beads in his hair and was wearing blue jean shorts and a white t-shirt. She also described the perpetrators' car, including the license plate number. She testified that she did not recall giving the officers an estimate of the appellant's height or weight. Mr. Becerra testified that his wife did most of the talking because he had difficulty speaking English; however, he agreed with the statements she gave.

Patrol Officer Gerry Gann and Detectives Derry Baltimore and Daniel Henkel testified that they responded to the scene after the robbery complaint. The officers recalled that in addition to the description testified to by the Becerras, the victims also estimated that the appellant was 5'10" tall and weighed approximately 170 pounds. The officers acknowledged that the victims did not mention seeing any additional distinguishing features, such as a scar, on the perpetrators.

Officer Gann stated that after the Becerras described the encounter, he used the computer in his patrol vehicle to research the license plate number given by the Becerras. He then gave the detectives the information he obtained.

Detectives Balitmore and Henkel testified that the young woman who was the registered owner of the vehicle had been issued a traffic citation three weeks prior to the incident. The detectives went to the address listed on the citation and discovered that it was

an apartment complex. The detectives drove around the apartment complex and located a silver Taurus with a license plate number matching the description given by the victims.

The detectives said that after they located the vehicle, they parked nearby. After fifteen minutes of surveillance, they saw two black females and two black males, one of whom was the appellant, get into the Taurus. The detectives testified that the men matched the descriptions given by the victims. The detectives followed as the appellant drove to a Shell gas station. At the station, the detectives approached the vehicle and arrested the appellant.

Detective Henkel said that the next day, he visited the victims at Mrs. Becerra's daughter's apartment. He showed the victims photographic lineups, and they both identified the appellant as the perpetrator who took Mr. Becerra's wallet. However, they were unable to identify the gunman. At the end of the first day of trial, the State concluded its case-in-chief.

Thereafter, defense counsel asked the court to allow the appellant to stand close to the jurors so they could observe a distinctive scar on his forehead. When the trial court noted that the jury had been able to observe the appellant throughout trial, defense counsel stated that "the victims saw him pointblank." The trial court cautioned defense counsel that the appellant would not be allowed to get that close to the jury but said that the appellant could stand and face the jury or introduce a photograph of the scar.

At the beginning of the second day of trial, defense counsel renewed his request. He argued that the trial court's denial of his request to have the appellant stand close to the jury deprived the appellant of the right to present a defense. Counsel further argued, "This is an identification case and I believe that it's prejudicial [and] unfair . . . for the Jury not to have the same view of [the appellant as the victims had]." The trial court again stated that it would not allow the appellant to get "within two feet of the Jury."

As defense counsel continued to argue that the jury needed to see the appellant's scar because identification was important, he noted that he "cross examined the cops on it [but there] was no identification of his scar." Defense counsel then offered three alternatives to the appellant standing close to the jury. First, he stated that the appellant could be shackled under the front table while the jurors came by to look at him. The trial court denied this request. Second, counsel stated that a video projection of the appellant's face could be shown on a screen to the jury. The court noted that it did not have the equipment to accommodate counsel's suggestion and denied this request. Third, counsel stated that he took photographs of the appellant the previous evening. He asked that he be allowed to submit the photographs, but he stated that if he did so, he would need to become a witness

in order to authenticate the photographs. The court noted that defense counsel "should have thought of that before [he] did it that way."

The court informed the appellant that he could stand "in the well" or that other witnesses, such as friends or family members, could be called to testify regarding the appellant's scar. The court also stated that the appellant could choose to testify about his scar.

Following the trial court's denials of his requests, the appellant chose to testify. The appellant told the jury that he had a "gigantic" scar after an incident two years before required him to have twenty-six stitches on the left side of his forehead. He acknowledged that he had a prior conviction for misdemeanor theft. He said that he was in the Taurus when he was approached by the detectives but that he had no involvement in or knowledge of the robbery.

Based upon the foregoing, the jury found the appellant guilty of the aggravated robbery of Mrs. Becerra and the aggravated robbery of Mr. Becerra. The trial court imposed a sentence of nine years for each conviction and ordered that the sentences be served concurrently.

On appeal, the appellant argues that the trial court erred by not allowing him "to be viewed directly by the jury," thereby depriving him of his right to present a defense. The appellant contends that this error required him "to give up one right in order to exercise his other right," namely relinquishing his Fifth Amendment right against self-incrimination so he could be viewed more closely by the jury.

## II. Analysis

As the appellant correctly maintains, a criminal defendant has a right to present a defense. This right is guaranteed by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. State v. Brown, 29 S.W.3d 427, 432 (Tenn. 2000). However, our supreme court has explained that this right is "not absolute." Id. (internal quotation marks omitted) (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). Notably, the right may be tempered by "other legitimate interests in the criminal trial process," such as the need to "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Id. (internal quotation marks omitted) (quoting Chambers, 410 U.S. at 295, 302). The right of an accused to present a defense is not abridged as long as the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." Id.

(internal quotation marks omitted) (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998)).

As we stated earlier, defense counsel asked that the appellant be allowed to stand "a foot or two" in front of the jury so they could see that he had a distinctive scar on his forehead which was never mentioned by the victims, calling their identification of the appellant as the perpetrator into question. After the trial court denied the request, counsel asked that the jury be allowed to come to the front table to see the appellant. When that request was also denied, counsel asked that the appellant's face be displayed on a projection screen for the jury. The court refused, stating that the court did not possess the necessary equipment. Finally, counsel asked that the photographs he took of the appellant the previous afternoon be admitted but stated that he might have to testify in order to get the photographs admitted as an exhibit. The court advised that the appellant could put on the desired proof in other ways, such as by standing "in the well"; by having a witness, such as a friend or family member, testify regarding the scar; or by having the appellant testify about his scar. The appellant ultimately chose to testify. On appeal, the appellant argues that the trial court erred by refusing to allow him to get close to the jury, thereby infringing upon his right to present a defense, and that the error forced him to relinquish his right not to testify.

The court denied the appellant's request to stand close to the jury, citing safety concerns. This court has previously held that "[t]he determination to allow the display of body parts and physical traits to the jury is within the sound discretion of the trial court." <u>State v. David Lee Richards</u>, No. 03C01-9207-CR-230, 1993 WL 80536, at *3 (Tenn. Crim. App. at Knoxville, Mar. 23, 1993) (citing <u>State v. Davis</u>, 706 S.W.2d 96 (Tenn. Crim. App. 1985)). Generally, a trial court's decision not to allow such a display "will not be overturned, especially where the jury had ample opportunity to view the defendant during the course of the trial." <u>State v. Turner</u>, 675 S.W.2d 199, 206 (Tenn. Crim. App. 1984). In the instant case, the trial court noted that the jury had the opportunity to view the appellant throughout trial. Therefore, we conclude that the trial court did not infringe upon his right to present a defense by refusing his request to stand close to the jury.

The appellant's contention that the trial court essentially forced him to forfeit his Fifth Amendment right against self-incrimination so that he could show his scar during his testimony is similarly unavailing. Generally, the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution provide a privilege against self-incrimination to those accused of criminal activity. <u>See</u> <u>State v. Callahan</u>, 979 S.W.2d 577, 581 (Tenn. 1998). The court advised the appellant that he could present proof about his scar in a variety of ways, such as through photographs, the testimony of a friend or family member, or the appellant's testimony. Defense counsel took photographs of the appellant but, upon stating that he might need to testify to have the photographs admitted as exhibits,

counsel did not pursue this option. Additionally, the appellant chose not to present the testimony of a friend or family member regarding his scar. The appellant also rejected another option offered by the court by electing not to stand "in the well" which was closer to the jury.

We further note that the appellant could have asked the victims and/or the officers about the scar on the appellant's face during cross-examination. Although counsel elicited on cross-examination that the victims did not mention the appellant had a scar, he failed to point out that the appellant had a noticeable scar on his forehead. Finally, we again note that the jury was able to see the appellant throughout the trial, albeit not in the manner desired by the appellant. Considering the foregoing, we conclude that the trial court did not improperly infringe upon the appellant's Fifth Amendment rights. Cf. State v. Brandon Mobley, No. E2006-00469-CCA-R3-CD, 2007 WL 1670195, at *14 (Tenn. Crim. App. at Knoxville, June 11, 2007) (stating that a defendant was not entitled to relief on Fifth Amendment grounds when he felt "forced" to testify following the trial court's exclusion of an expert's testimony).

### III.  Conclusion

In sum, we conclude that the trial court did not err in denying the appellant's request to stand close to the jury and did not violate the appellant's Fifth Amendment right against self-incrimination by essentially "forcing" him to testify. Accordingly, we affirm the judgments of the trial court.

_____

NORMA McGEE OGLE, JUDGE