# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 23, 2012 Session

## MARVIN BERNATSKY AND PATRICIA BERNATSKY
### v.
## DESIGNER BATHS & KITCHENS, LLC

**An Appeal from the Circuit Court for Shelby County**
**No. CT-006113-10     James F. Russell, Judge**

**No. W2012-00803-COA-R3-CV - Filed February 15, 2013**

J. STEVEN STAFFORD, J., concurring:

I agree with the result reached by the majority in this case. However, I write separately to emphasize my reasoning in concluding that an ambiguity exists, in direct contradiction to our earlier decision in *Jacob v. Partee*, No. W2012-00205-COA-R3–CV, 2012 WL 3249605 (Tenn. Ct. App. Aug. 10, 2012) (perm. app. denied Dec. 12, 2012).

The central issue in this case concerns whether, when appealing from the General Sessions Court to the Circuit Court, the payment of standard court costs pursuant to Tennessee Code Annotated 8-21-401 satisfies the requirement to post an appeal bond pursuant to Tennessee Code Annotated Section 27-5-103. Thus, the issue presented is one of statutory construction. In interpreting a statute, our analysis is guided by the rules of statutory construction. As explained by the Tennessee Supreme Court in *Mills v. Fulmarque*, 360 S.W.3d 362 (Tenn. 2012):

> Our role is to determine legislative intent and to effectuate legislative purpose. [*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)]; *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See Lee Med., Inc.*, 312 S.W.3d at 526; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337

(Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See Lee Med., Inc.*, 312 S.W.3d at 527; *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills*, 360 S.W.3d 368. Therefore, courts must first determine whether the language of the statute is ambiguous. Only if the plain language of the statute presents an ambiguity or a conflict may the court consider material other than the statutory text. "When a statute is clear, we apply the plain meaning without complicating the task." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). "Our obligation is simply to enforce the written language." *Davis*, 308 S.W.3d at 837 (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)).

Accordingly, I turn to the language of Tennessee Code Annotated Section 27-5-103, which provides:

> (a) Before the appeal is granted, the person appealing shall give bond with good security, as hereinafter provided, for the costs of the appeal, or take the oath for poor persons.
> (b) An appeal bond filed by a plaintiff or defendant pursuant to this chapter shall be considered sufficient if it secures the cost of the cause on appeal.

Based on the above language, the majority concludes that the statute "lacks precision" in that the phrase "as hereinafter provided" may refer to another statute to establish the costs of the appeal, specifically the later-enacted Tennessee Code Annotated Section 8-21-401. However, the later enactment of subsection (b) is not relevant to the inquiry of whether Tennessee Code Annotated Section 27-5-103 is ambiguous. Courts must only consider the statutory text in determining whether an ambiguity exists. *See Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011). Only if a statute is determined to be ambiguous may the court then "consider matters beyond the statutory text, including public policy, *historical facts relevant to the enactment of the statute*, the background and purpose of the statute, and

the entire statutory scheme. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citing *Lee Med., Inc.*, 312 S.W.3d at 527–28) (emphasis added). Thus, consideration of matters such as "historical facts preceding or contemporaneous with the enactment of the statute being construed . . . [and] earlier versions of the statute" is only permitted once the statute is determined to be ambiguous. Am. Jur. 2d Statutes § 64 n.5 (citing *Lee Med., Inc.*, 312 S.W.3d at 527–28). However, "these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions." *Mills*, 360 S.W.3d at 368. Disregarding the historical context of the amendment to Tennessee Code Annotated Section 27-5-103 and considering only the current statutory text, as I must at this stage in the analysis, I cannot conclude that there is an ambiguity in the statute at issue.

To hold that the simple phrase "as hereinafter provided" alone causes an ambiguity creates a forced interpretation at odds with the established rules of statutory construction. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000) (holding that a court's job in interpreting a statute is to ascertain the intention of the legislature without employing a "forced or subtle interpretation that would limit or extend the statute's application"). Indeed, the Tennessee Supreme Court has held that "it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503 (Tenn. 2004). In this case, the majority seeks to find an ambiguity in the isolated phrase "as hereinafter provided," while ignoring the fact that the most natural interpretation of the statute's text requires us to hold that the "as hereinafter provided" language clearly refers to the following subsection of the statute.

Instead, I would focus on the plain language of the requirement that the bond at issue secure the "costs of the appeal." It is clear that Tennessee Code Annotated Section 27-5-103 requires the filing of a bond for the "costs of the appeal." What is unclear from the statute is what "costs" the legislature intended the bond to secure. In this Court's recent opinion, *Jacob v. Partee*, we concluded that the bond required by Tennessee Code Annotated Section 27-5-103 must "secure[] all costs incurred throughout the appeal, as opposed to an initial appeal filing fee." The statute, however, does not specifically require that the bond cover all the costs which may be incurred during the litigation because the statute fails to define the term "costs." Because the statute placed no express limit on the "costs" the bond must secure, the *Jacob* Court inferred that the bond must cover all of the yet-to-be-determined costs, which might be incurred throughout the litigation. Appellants argue, however, that the term "costs" may also refer to the amounts paid at the commencement of litigation pursuant to Tennessee Code Annotated Section 8-21-401. Thus, the legislature's intended meaning of the word "costs" is the central issue in determining whether the statute at issue is ambiguous.

In interpreting the meaning of a word in a statute, the court may utilize dictionary definitions. *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting *State v. Williams*,

690 S.W.2d 517, 529 (Tenn. 1985)); *see also* 82 C.J.S. Statutes § 415 ("If the statute does not sufficiently define a word used therein, the court may consider all known definitions of the word, including dictionary definitions, in order to determine the plain and ordinary meaning of the word.") (footnotes omitted). A Dictionary of Modern Legal Usage defines "costs" as "(1) the charge or fees 'taxed' by the court, such as filing fees, jury fees, court house fees, and reporter fees; or (2) the expenses of the litigation, prosecution, or other legal transaction, especially those allowed in favor of one party against the other." Bryan Garner, A Dictionary of Modern Legal Usage 228 (2d ed. 1995); *see also **Cornell Glasgow, LLC v. LaGrange Properties, LLC***, Nos. N11C–05–016–JRS CCLD, N11C–07–160–JRS CCLD, 2012 WL 6840625, at *24 (Del. Super. Ct. Dec. 7, 2012) ("Under case law . . . our courts have defined costs as those 'expenses necessarily incurred in the assertion of [a] right in court,' such as court filing fees, fees associated with service of process or costs covered by statute."); ***People v. Hunter***, 831 N.E.2d 1192, 1201 (Ill. App. Ct. 2005) ("Cost" is defined as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees.") (quoting Black's Law Dictionary 372 (8th ed. 2004)); ***Divine v. Groshong***, 679 P.2d 700, 711 (Kan. 1984) ("The term 'costs' ordinarily means the fees and charges of the court—filing fees, fees for service of process and the like."); ***Campos v. Yellow, Inc.***, No. H-04-3892, 2007 WL 4289998, at *2 (S.D. Tex. Dec. 4, 2007) (utilizing the definition from A Dictionary of Modern Legal Usage in a case involving contract interpretation). Accordingly, the "costs of the appeal" may refer to the costs of the entire appeal taxed at the conclusion of the litigation, as was decided in the ***Jacob*** case, ***or*** it may simply refer to a "fee" charged by the court to commence litigation. A statute is ambiguous when "some of the words used may refer to several objects and the manner of their use does not disclose the particular objects to which the words refer." 2A Sutherland Statutory Construction § 45:2 (7th ed.). Because the statute is unclear as to what "costs" must be covered by the bond to satisfy the jurisdictional requirements of Tennessee Code Annotated Section 27-5-103, I must conclude that the statute at issue is ambiguous.

I recognize that this holding is in direct contradiction to the holding expressed by this Court in ***Jacob***. *See **Jacob***, 2012 WL 3249605, at *3. However, unlike my focus on the term "costs," which I have determined is ambiguous, the ***Jacob*** Court focused on the distinction between the term "bond" used in Tennessee Code Annotated Section 27-5-103 and what it deemed the "fee" requirements in Tennessee Code Annotated Section 8-21-401. Because the ***Jacob*** Court concluded that the requirement to post a "bond" and pay a "fee" are not synonymous, the Court concluded that Tennessee Code Annotated Section 27-5-103's requirement to post a bond was not satisfied by the mere payment of fees pursuant to Tennessee Code Annotated Section 8-21-401. Upon further reflection, however, I note that the term "fee" in Tennessee Code Annotated Section 8-21-401 appears only in the heading and subheading of the particular provision at issue. Tennessee law provides that "[h]eadings to sections in this code and the references at the end of such sections giving the source or

history of the respective sections shall not be construed as part of the law." Tenn. Code Ann. §1-3-109. Thus, the legislature has directed courts construing statutes to disregard the language contained in headings in favor of the language utilized in the body of the statute. Here, the body of the statute specifically states that amounts to be paid pursuant to Tennessee Code Annotated Section 8-21-401 are "costs." Tenn. Code Ann. § §8-21-401(a). In addition, the particular provision at issue in this case, governing appeals from General Sessions Courts to Circuit Courts, refers to the amount to be paid by the litigant as "standard court cost[s]." Tenn. Code Ann. §8-21-401(b)(1)(C)(i). Thus, the word "costs" is utilized by the legislature in both the appeal bond statute, Tennessee Code Annotated Section 27-5-103, and the "court cost" statute, Tennessee Code Annotated Section 8-21-401.  When the legislature chooses to use the same word in more than one statute on the same subject matter, the word may be construed to have the same meaning in both statutes:

> In construing the language of a statute, the use of the same words in another statute on the same or a related subject is entitled to consideration. Thus, when a legislature has used a word or phrase in a statute in one sense and subsequently uses the same word or phrase in legislating on the same subject matter, it will be understood as using it in the same sense unless there is something in the context or the nature of things to indicate that it has intended a different meaning thereby.

82 C.J.S. Statutes § 478 (footnotes omitted); *see also* **State v. Kendrick**, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999) (holding that adopting different definitions for the same term in similar statutes would "hardly serve the doctrine of *stare decisis*"); **State v. Turner**, 675 S.W.2d 199 (Tenn. Crim. App. 1984) (holding that the trial court did not err in defining a term in a criminal statute using the definition provided in another statute in fashioning the jury instructions in that case). When considering the operative word used in Tennessee Code Annotated Section §8-21-401(b)(1)(C)(i), rather than the word used in the heading to the statute, it is clear that ambiguity exists as to whether the legislature indeed intended the term "costs" in both statutes to be synonymous. Thus, the focus of **Jacob**, and its resulting holding, were erroneous. Instead, I must conclude that Tennessee Code Annotated Section 27-5-103's requirement to post a bond for the "cost of the appeal" is ambiguous in that it could require the posting of a bond for *all* the costs of the appeal, or it could merely require a bond covering the costs outlined in Tennessee Code Annotated Section 8-21-401(b)(1)(C)(i). Having found such an ambiguity, the majority was correct to consider material beyond the statutory text to discern the legislature's intent.

Our decision that Tennessee Code Annotated Section 27-5-103 is ambiguous is supported by the multitude of divergent results reached by courts on this issue. *See **Jacob**,*

2012 WL 3249605, at *3 (holding that payment of standard court costs is not sufficient to vest jurisdiction in the Circuit Court); *Carter v. Batts*, 373 S.W.3d 547 (Tenn. Ct. App. 2011) (perm. app. denied April 12, 2012) (holding, in dicta, that payment of the standard court costs was sufficient to vest jurisdiction in the Circuit Court); *University Partners Development v. Bliss,* No. M2008-00020-COA-R3-CV, 2009 WL 112571 (Tenn. Ct. App. Jan. 14, 2009) (designated not for citation by Rule 10 of Tennessee Rules of the Court of Appeals) (dismissing an appeal, *sua sponte*, for failure to post an appeal bond for all the costs of the appeal); *Brady v. Valentine,* No. 01-A-019707CV00308, 1998 WL 83746, at *1 (Tenn. Ct. App. Feb. 27, 1998) (holding that a "cost bond" in the amount of $250.00 was sufficient to perfect the appeal); *Frost Agency v. Spurlock,* 859 S.W.2d 337, 338 (Tenn. Ct. App. 1993) (referring to $250.00 bond for appeal from General Sessions Court to Circuit Court); *Tejwani v. Trammell,* No. 02A01-9103CV00036, 1991 WL 136224 (Tenn. Ct. App. July 26, 1991) (holding that an appeal bond in the amount of $250.00 was sufficient to meet the appeal bond requirements); *City of Red Boiling Springs v. Whitley*, 777 S.W.2d 706 (Tenn. Ct. App. 1989) (holding that payment of an initial filing fee, without a surety bond, was insufficient to vest jurisdiction in the Circuit Court); *Parrish v. Yeiser*, 298 S.W.2d 556, 559 (Tenn. Ct. App. 1955) (holding that the "costs of a cause" on appeal may be "collected out of cash on deposit"); *see also* Tenn. Op. Atty. Gen. No. 12-23, 2012 WL 682072 (Tenn. A.G. Feb. 23, 2012) (requiring that a litigant appealing from General Sessions Court file a surety bond, rather than simply pay initial court costs, to perfect the appeal).

In addition, the rules and procedures governing actions in General Sessions Courts are not contained in one statute. Instead, the legislature has enacted a patchwork scheme governing General Sessions practice ranging over several chapters of the Tennessee Code Annotated. *See, e.g.,* Tenn. Code Ann. § 8-21-401 (providing a "standard court cost" for appeals from General Sessions Court to Circuit Court); Tenn. Code Ann. § 16-15-101 *et. seq.* (outlining establishment, jurisdiction, and procedure in General Sessions Courts, including appeals to the Circuit Court); Tenn. Code Ann. § 20-12-123 (allowing additional "security" to be posted in the Circuit Court for appeals from General Sessions Courts); Tenn. Code Ann. §27-5-103 (providing that litigants appealing from General Sessions Court must post a bond for the "costs of the appeal"); Tenn. Code Ann. § 67-4-602(b) (requiring litigants in General Sessions Court and Circuit Court to pay a "privilege tax on litigation"). Because General Sessions practice is not governed by one statute, it would be a forced interpretation of the statute to consider the requirements of Tennessee Code Annotated Section 27-5-103 in isolation. Indeed, statutes that govern the same subject matter are to be construed *in pari materia*:

> Statutes which relate to the same subject matter, including those that concern the same class of persons or things or which have a common purpose are in pari materia[]. . . .

Statutes that are in pari materia must be harmonized, if possible, because of the presumption that the legislature has intended to create a harmonious body of law. Such statutes must be construed together as though they constitute one law. That is, they must be construed as one system and governed by one spirit and policy. The legislative intention must be ascertained, not solely from the literal meaning of the words of a statute but from a view of the whole system of which it is but a part.

Statutes in pari materia should be so construed as to give meaning to both, or all of them, if this can be done, and each statute should be afforded a field of operation. Where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the courts must construe the statutes to reflect the obvious intent of the legislature and permit the practical application of the statutes.

82 C.J.S. Statutes § 476 (footnotes omitted). "Statutes do not exist in a vacuum but must be read in relationship to one another to effectuate the intent of the statutory scheme as a whole." 82 C.J.S. Statutes § 474. Statutes which are to be construed *in pari materia* "are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." ***Berry's Chapel Util., Inc. v. Tenn. Regulatory Auth.***, No. M2011-02116-COA-R12-CV, 2012 WL 6697288, at *3 (Tenn. Ct. App. Dec. 21, 2012) (quoting ***Wilson v. Johnson Cnty.***, 879 S.W.2d 807, 809–10 (Tenn. 1994)). According to a treatise on the subject:

It is essential that statutes be read as constituting one harmonious whole. Consequently, a statute is to be explained in conjunction with other statutes to the end that they may be a harmonious and consistent body of law. Accordingly, a reviewing court must attempt to harmonize each statutory enactment, considering and giving effect to the entire legislative scheme.

82 C.J.S. Statutes § 475 (footnotes omitted). Because the use of the word "costs" in Tennessee Code Annotated Section 27-5-103 creates doubt as to the proper definition intended by the legislature, other statutes governing the appeal procedure from General Sessions Court to Circuit Court are properly considered in resolving the ambiguity and determining the intention of the legislature. Such additional statutes, however, must be " construed together [with the appeal bond statute] . . . in order to advance their common

purpose or intent." ***Carver v. Citizen Utils. Co.***, 954 S.W.2d 34, 35 (Tenn. 1997). Based on the ambiguity in the plain language of Tennessee Code Annotated Section 27-5-103, it is appropriate to consider material beyond the statutory text, including the "court cost" statute, Tennessee Code Annotated Section 8-21-401, and its accompanying legislative history.

Having determined that Tennessee Code Annotated Section 27-5-103 is ambiguous based on the reasoning above, I concur in the result reached by the majority in this case.

_____
J. STEVEN STAFFORD, JUDGE